**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JAN 6 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

LAMARTICE WRIGHT,

        Petitioner-Appellant,

  v.

NETHANJAH BREITENBACH;
ATTORNEY GENERAL FOR THE STATE
OF NEVADA,

        Respondents-Appellees.

No.   22-16456

D.C. No.
2:18-cv-02136-RCJ-VCF

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, District Judge, Presiding

Submitted October 9, 2024[**]
Las Vegas, Nevada

Before: CHRISTEN, BENNETT, and MILLER, Circuit Judges.
Dissent by Judge CHRISTEN.

Lamartice Wright appeals from the district court's denial of his 28 U.S.C.

§ 2254 habeas petition. The only issue is "whether the district court properly

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

dismissed Claims 2 and 3 as unexhausted." Dkt. No. 3.  Both claims are ineffective assistance of counsel ("IAC") claims.  "Claim 2" alleges IAC based on trial counsel's failure to argue that Wright's sentences for battery with intent to commit a crime and battery with use of a deadly weapon violated double jeopardy.  "Claim 3" alleges IAC based on trial counsel's failure to move to suppress a suggestive photo lineup.  We have jurisdiction under 28 U.S.C. § 2253.

We review de novo a district court's exhaustion and procedural default determinations.  *See Runningeagle v. Ryan*, 825 F.3d 970, 978 (9th Cir. 2016); *Wooten v. Kirkland*, 540 F.3d 1019, 1023 (9th Cir. 2008).  While the district court properly determined that Wright failed to exhaust the claims, the district court erred in rejecting Wright's alternative argument that the claims should be deemed technically exhausted based on procedural default, and that he could overcome the default under *Martinez v. Ryan*, 566 U.S. 1 (2012).[1]  We therefore vacate the district court's denial order and remand for the court to conduct the *Martinez* analysis. Because the parties are familiar with the facts, we do not recount them here.

1.      Wright argues that both claims were exhausted or that he should be excused from the exhaustion requirement because (1) the Nevada Supreme Court's remand order prohibited him from reraising the claims; (2) the Nevada Supreme

---

[1] "*Martinez* announced an exception to the . . . rule that ineffective assistance of [post-conviction] counsel cannot establish cause to overcome procedural default." *Dickens v. Ryan*, 740 F.3d 1302, 1319 (9th Cir. 2014) (en banc).

Court could have addressed the merits during the first post-conviction appeal before it remanded his case for appointment of counsel and further proceedings; and (3) Wright was not required to present the claims again on remand. We reject these arguments.

Section 2254 requires a petitioner to "exhaust[] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). A petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." *Id.* § 2254(c).

On its face, nothing in the Nevada Supreme Court's remand order limited Wright's right to pursue Claims 2 and 3 on remand, including on appeal from the state district court's second denial. Although the Nevada Supreme Court specifically referenced only the plea-offer claim, it did so to provide an "example" as to why counsel should have been appointed. The court neither stated nor suggested that the habeas proceedings on remand would be limited to the plea-offer claim. Because Wright had "the right under the law of the State to raise, by any available procedure," *id.*, the claims on remand, but failed to do so (by failing to appeal their denial), he did not exhaust the claims.

Wright's second argument—that the Nevada Supreme Court could have addressed the merits of the claims during Wright's first post-conviction appeal—is

3

beside the point. As discussed above, the question is whether Wright still had a right to raise his claims on remand. Because he retained such a right, but failed to exercise it by failing to appeal, he did not exhaust the claims. *See id.* Similarly, because Wright could have pursued his claims on remand and on appeal from the state district court's second denial, he had to raise them to exhaust them.[2] *See id.*

2.    Wright argues in the alternative that even if he failed to exhaust his claims, the claims would be procedurally defaulted (and thus technically exhausted), and he can overcome that default under *Martinez*. The district court found that

---

[2] Respectfully, we disagree with the dissent's view that *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999), compels a different result. First, *Boerckel* did not address the circumstances here: whether a petitioner must continue to raise his claims on remand—in the same habeas proceeding—to exhaust them. *See id.* at 839–40 (explaining that the issue presented was "whether a state prisoner must present his claims to a state supreme court in a petition for discretionary review in order to satisfy the exhaustion requirement"). Second, in explaining that 28 U.S.C. § 2254(c) does not "requir[e] a state prisoner to invoke *any possible* avenue of state court review," *Boerckel*, 526 U.S. at 844, the Court identified two remedies that petitioners need not invoke to exhaust their claims: filing "repetitive petitions" and seeking "remedies [that] are alternatives to the standard review process and where the state courts have not provided relief through those remedies in the past," *id.* Our holding does not require Wright to do either. Rather, requiring Wright to pursue his claims on remand fits comfortably within Nevada's standard review process. Finally, *Boerckel* supports that Wright had to pursue his claims on remand to exhaust them. *Boerckel* explained that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking *one complete round of the State's established appellate review process*." *Id.* at 845 (emphasis added). Here, the pro se appeal did not constitute one "complete" round of Nevada's appellate review process because the Nevada Supreme Court remanded the case for further proceedings. Nothing in *Boerckel* suggests that a petitioner who has succeeded in obtaining a remand from a state appellate court may simply refuse to participate in further state proceedings and declare his claims exhausted.

*Martinez* was inapplicable because Wright claimed only that his post-conviction counsel erred by failing to appeal from the second denial of Claims 2 and 3. *See Martinez*, 566 U.S. at 16 (noting its holding does not apply to "attorney errors in other kinds of proceedings, *including appeals* from initial-review collateral proceedings" (emphasis added)). Accordingly, the district court did not analyze whether Wright could overcome any default under *Martinez*. The district court erred because it misconstrued Wright's claim of error by post-conviction counsel.

In his opposition to the State's motion to dismiss, Wright argued that his post-conviction counsel was ineffective. Wright explained:

> As to the second *Martinez* element, if this Court finds that post-conviction counsel could have raised additional claims beyond the plea offer during the second round of post-conviction litigation, then post-conviction counsel was ineffective for abandoning the other meritorious claims raised by Wright in his pro se petition. This includes Claims 2 and 3 of the Amended Petition.

Wright's claimed error was broader than just post-conviction counsel's failure to appeal Claims 2 and 3. Wright claimed that his post-conviction counsel was ineffective because counsel had completely failed to address or "abandon[ed]" Claims 2 and 3 on remand before the state district court. Other parts of Wright's opposition supported that broader argument.

We therefore vacate the district court's order dismissing Claims 2 and 3 and remand for the court to conduct the *Martinez* analysis of Wright's claim that he can overcome any procedural default because his post-conviction counsel was

5

ineffective for failing to present any arguments supporting Claims 2 and 3 before the state district court. *See Rodney v. Filson*, 916 F.3d 1254, 1261 (9th Cir. 2019) (noting that the standard practice is to remand to the district court for a decision in the first instance).

**VACATED and REMANDED.**

*Lamartice Wright v. Nethanjah Breitenbach*, 22-16456
CHRISTEN, Circuit Judge, dissenting:

According to the standard articulated in binding precedent, Wright adequately raised Claims 2 and 3 when he originally filed his pro se habeas petition in the Nevada Supreme Court. Because he gave the state court "one full opportunity" to resolve these claims, he was not required to re-raise them when the Nevada Supreme Court remanded his petition to the trial court for further factual development of Claim 1. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). For these reasons, I respectfully dissent.

"Petitioners are not required to exhaust their claims repeatedly before proceeding to federal court." *Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir. 2011) (citing *Boerckel*, 526 U.S. at 844). "If Petitioner properly argued his claims through 'one complete round of the State's established appellate review process' during an earlier petition, . . . they are exhausted and can be considered in federal habeas proceedings." *Id.* (quoting *Boerckel*, 526 U.S. at 845).

The majority concludes that Wright did not exhaust Claims 2 or 3 because he had "the right under the law of the State to raise, by any available procedure," Claims 2 and 3 on remand from the Nevada Supreme Court. *See* 28 U.S.C. § 2254(c) (A petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State, . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."). But Wright was not required

1

to raise these claims a second time. The fact that Wright could have reasserted Claims 2 and 3 on remand, or appealed the trial court's subsequent blanket dismissal of his entire petition, does not change that Claims 2 and 3 were fully exhausted when he presented them to the state supreme court in his pro se petition.

The majority's reasoning contradicts black letter law. In *Boerckel*, the Supreme Court specifically addressed the "right . . . to raise" provision of § 2254(c) and explained that "[a]lthough this language could be read to effectively foreclose habeas review by requiring a state prisoner to invoke any possible avenue of state court review, we have never interpreted the exhaustion requirement in such a restrictive fashion. . . . Thus, we have not interpreted the exhaustion doctrine to require prisoners to file repetitive petitions." *Boerckel*, 526 U.S. at 844 (emphasis omitted).

Supreme Court precedent requires only that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845. "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry,* 513 U.S. 364, 365–66 (1995) (*per curiam*); *Boerckel*, 526 U.S. at 845). Wright did just

2

that because he "fairly presented" Claims 2 and 3 to the Nevada Supreme Court in his pro se petition.[1] *See Kyzar v. Ryan*, 780 F.3d 940, 947 (9th Cir. 2015) ("In order to fairly present an issue to a state court, a [habeas] petitioner must present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief." (alteration in original) (quotation marks and citation omitted)).

Wright's handwritten pro se petition more than adequately teed up the basic legal and factual bases for Claims 2 and 3. Specifically, when Wright presented Claim 2 to the Nevada Supreme Court, his pro se petition alleged that his trial counsel should have noticed that "battery with use of deadly weapon" and "battery with intent to commit a crime" are essentially duplicate overlapping charges arising out of the same incident with only one victim. As such, he argued that the State violated his fundamental rights against double jeopardy by convicting him of both offenses. His pro se petition left no doubt about the claim he was asserting and the constitutional basis for it:

> Defendant's trial and appellate counsel failed to investigate any aspect of the case. On a prima facia showing a mature counsel would have noticed that the amended Count 3-Battery With Use of Deadly Weapon (Felony - NRS 200.481) and Count 4-Battery with Intent to

---

[1] The district court reasoned that "the fact that the Nevada Supreme Court could have ruled on the merits instead of remanding for further development of Wright's claims cannot by itself mean that grounds 2 and 3 are exhausted." Under binding precedent, the exact inverse is true.

3

Commit a Crime (Felony - NRS 200.400) are duplicative charges in nature arising out of the same incident with only one victim which violates the defendant's fundamental state and Federal constitutional right against double jeopardy and calling into question counsel's experience and the evidence relied upon to warrant the charges.

The United States Supreme Court has held: "Trial counsel's failure to raise [a] valid issue of double jeopardy defense in a robbery case constituted ineffective assistance of counsel" and "Appellate counsel's failure to raise double jeopardy claim on appeal constituted ineffective assistance of counsel . . ." Murphy v. Puckett, 892 F.2d 94 (5th Cir. 1990), Griffin v. US, 598 F.2d 1176 (D.C. App. 1991).

. . . Defense's failure to file any pre-trial motions (i.e. motion to dismiss duplicative charge of battery . . . [)]. . . . violat[ed] his state and federal constitutional right to have effective and competent counsel representing during the critical stages of the criminal process.

Pet. for Writ of Habeas Corpus 8–9 (June 7, 2013). By including "a reference to a federal constitutional guarantee" against double jeopardy and a "statement of facts" about counsel's failure to raise double jeopardy in light of the charges against him, Wright's pro se petition fairly presented his claims. *See Kyzar*, 780 F.3d at 947.

Unlike Claim 1, Claim 2 was not an "issue[] that require[d] development of facts outside the record," *Wright v. State*, 130 Nev. 1264 (Feb. 13, 2014), when the Nevada Supreme Court remanded Wright's petition and directed that counsel be appointed. The state court had all it needed to evaluate whether trial counsel was ineffective for not raising a double jeopardy challenge: Wright was sentenced to 24–120 months on battery with use of a deadly weapon, Nev. Rev. Stat. § 200.481, and 24–96 months on battery with intent to commit a crime, Nev. Rev. Stat.

4

§ 200.400. The Nevada Supreme Court had already decided that a conviction for those two battery counts, arising from a single incident and involving a single victim, violate double jeopardy. *Litteral v. State*, 634 P.2d 1226, 1230 (Nev. 1981) ("To allow the conviction for a second battery to stand constitutes an impermissible double punishment.").

Similarly, in his original presentation of Claim 3, Wright's pro se petition alleged that trial counsel provided ineffective assistance by failing to move to suppress a suggestive photographic lineup. Wright's petition argued:

> The court has established that when reviewing the totality of circumstances of a case, more specifically the evidence gathering in a police photographic lineup, a court should examine the photograph to determine: (1) whether the photographs are strikingly similar and (2) whether the person showing the photographs to the witness did anything to render the procedure unduly suggestive such as directing the witness' attention to a particular photograph. The Court has also determined that "minor differences in photographs are not sufficient to violate display" or when "each photograph [in the photo array] is altered in the same manner. United States v. Doran, 624 F. Supp. 94, 97 (E.D.N.Y. 1985), United States v. Dunbar, 767 F.2d 72 (3rd Cir. 1985).

> The Fifth and Fourteenth Amendments prohibits the introduction of evidence at trial when that evidence is tainted by unreliable identification elicited through unnecessarily suggestive photographic display and the federal courts have recognized that habeas corpus relief was warranted when the state court violated defendant's right to due process by admitting eyewitness identification that were the result of impermissibly suggestive pretrial identification procedures.

5

> The Courts held that: "Eyewitness identified at trial following a pretrial identification will be set aside on that ground [as tainted] if the . . . identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. U.S., 390 U.S. 337; Stovall v. Denno, 388 U.S. 293 (1969); Neil v. Biggers, 409 U.S. 188 (1972).

Pet. 24 (alterations in original). In a section titled "Defendant's conviction and/or sentence are unconstitutional in violation of his Fourth, Fifth, and Fourteenth Amendment Right to Due Process of Law," Wright's petition laid out additional facts about the "tainted photo array" and argued that there was insufficient evidence to tie him to the crime:

> The first of the 3 photo lineups was of six African American males all slightly similar in appearance with photo #4 of the array being that of the defendant and out of the six photos displayed in the first photo lineup the defendant's photo was considerably larger than the other photos, meaning there had been a resize of the photo of the defendant that was so glaringly obvious that anyone, especially the victim, who had the opportunity to view the photo array, would be automatically drawn to the defendant's photo out of the six photos displayed simply because it is so illegally suggestive that the only result possible is the misidentification of the defendant.

Pet. 26.

We are required to liberally construe Wright's pro se petition, *see Sanders v. Ryder*, 342 F.3d 991, 999 (9th Cir. 2003), but even if that were not the standard, Wright fairly presented to the state court his argument that trial counsel was ineffective for failing to move to suppress the prosecutor's identification witness despite the suggestive nature of the photo lineup. Wright argued that his claim was

6

grounded in the Fifth and Fourteenth Amendments, and he provided a clear statement of facts that supported his claim. *Kyzar*, 780 F.3d at 947. His petition described the mismatched photos in the lineup and he attached a copy of the lineup to his petition so the court was able to see the resized photo for itself. Pet. 26, 73 (Ex. L). In doing so, Wright gave the state court "all the facts necessary to give application to the constitutional principle." *See Davis v. Silva*, 511 F.3d 1005, 1010 (9th Cir. 2008); *id.* at 1009 ("Exhaustion . . . does not require that a 'habeas petitioner . . . present to the state court *every piece of evidence* supporting his federal claims in order to satisfy the exhaustion requirement.'" (alteration in original) (citation omitted)).

The Nevada Supreme Court's decision to remand the petition cannot support the district court's exhaustion ruling. Our case law requires that federal courts independently assess whether a petitioner has met the federal standard of fair presentation for a claim, even when a state court concludes that a petitioner inadequately presented it. *See Kim v. Villalobos*, 799 F.2d 1317, 1320 (9th Cir. 1986).[2] Further, even if the state court were owed deference on the exhaustion

---

[2] *See also Hodge v. Hornung*, 49 F. App'x 692, 692 (9th Cir. 2002) ("We have previously held that a state court's denial of a habeas petition for lack of particularity does not establish *per se* that state remedies have not been exhausted." (citing *Kim*, 799 F.2d at 1319–20)); *Barrera v. Att'y Gen. of Cal.*, 473 F. App'x 748, 749 (9th Cir. 2012) ("To determine whether Barrera's claims have been exhausted, this Court must independently analyze the petition presented to the

issue, the Nevada Supreme Court did not rule that it could not decide all of Wright's claims. It discussed only the insufficient record for Claim 1, which related to defense counsel's failure to convey a favorable plea offer—a claim that likely *did* require additional factual development—when it concluded that "[t]he failure to appoint post-conviction counsel prevented a meaningful litigation of the petition." *Wright*, 130 Nev. at 1264. The same was not true of Claims 2 and 3. To be sure, Claims 2 and 3 may have been more effectively argued by counsel, but that is not the standard for determining whether the claims were exhausted. The controlling question is whether Wright "fairly presented" them to the Nevada Supreme Court. *Kyzar*, 780 F.3d at 947.

The majority acknowledges that Wright need not file a "repetitive petition[]," *Boerckel*, 526 U.S. at 844, but nowhere do they explain how requiring him to re-raise Claims 2 and 3 is not repetitive. This is particularly glaring with respect to Claim 2, which presents a pure question of law previously addressed by Nevada courts. It is no answer to suggest that, because the state court chose not to rule on Claim 2, the burden somehow shifted back to Wright to present his claim a second time. *See id.* at 845. Having exhausted Claims 2 and 3 in state court,

California Supreme Court to determine whether Barrera satisfied federal exhaustion requirements . . . .").

8

Wright had the right to pursue those claims in federal court instead of repeating them on remand.

Because the district court erred when it deemed Claims 2 and 3 unexhausted, I do not reach whether Wright should be given an opportunity to satisfy *Martinez* on remand. Instead, I would remand to the district court with direction to deem Claims 2 and 3 exhausted and to consider the merits of these claims on the record presented to the state court.